**SHEARSON LOEB RHOADES, INC.,**
**Plaintiff-Appellant,**

v.

**Joseph MUCH, Defendant-Appellee.**

**No. 83–3084.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1984.

Decided Feb. 13, 1985.

Thomas W. Knepper, Chicago, Ill., for plaintiff-appellant.

David Apter, Kantor & Apter, Ltd., Chicago, Ill., for defendant-appellee.

Before WOOD, Circuit Judge, PELL, Senior Circuit Judge, and CAMPBELL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal arises from plaintiff-appellant Shearson's action to vacate an arbitrator's award of $89,110.20 in favor of defendant-appellee Joseph Much. The district court vacated the damages portion of the award and remanded that issue to the arbitrator. Shearson appealed, but we dismiss the appeal for lack of appellate jurisdiction.

### I.

Defendant Joseph Much operates a retail grocery in Chicago and owns several pieces of real estate and one corporation, whose assets consist of real estate and securities. Between 1967 and 1973, Much opened five investment accounts with Shearson, *e.g.*, "Joseph Much," his personal account; "Joseph Much and Todd Much," a joint account in which Joseph owned 80% and his son Todd owned 20%; and "Cornell Building Co., c/o Joseph Much," an account for the 7541 Building Corporation, the corporation Much owned. The present action involves only the "Joseph Much" account and Much's purchase on margin[1] of $125,000 of Government National Mortgage Association ("GNMA" or "Ginnie Mae") bonds in April, 1973.

Based on a recommendation from Shearson in early 1973, James Refakes, the Shearson account executive handling Much's account, suggested that Much purchase on margin some "Ginnie Mae" bonds. Much alleges that he told Refakes and Robert Dipisa, the operations manager at Shearson's Chicago office, that he wanted to open a new account for the bonds. That way, Much thought, Shearson would not consider his equity in the bonds when it calculated whether his "Joseph Much" account had sufficient equity to satisfy the maintenance margins. Much testified that Refakes and Dipisa assured him that he did not need a separate account and that losses on other securities in the account would not affect his equity in the bonds. Much then bought 125 $1,000 "Ginnie Mae" bonds, put them in his "Joseph Much" account, and paid Shearson $30,000 ($25,000 as the initial margin and $5,000 to reduce the amount of the loan from Shearson).

Contrary to what Much believed, Shearson included the bond equity when calculating whether the "Joseph Much" account satisfied the maintenance margin. Moreover, because the maintenance rate was 10%, only $12,500 of the $30,000 was needed to satisfy the margin. The remaining

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. To purchase on margin, an investor pays his broker only a percentage, or margin, of the actual purchase price. The remaining cost of the securities is a loan from the broker to the purchaser. The initial margin, the percentage the investor pays when purchasing securities, is usually higher than the maintenance margin, which is the percentage of equity to value that an investor must maintain in his account.

$17,500 was available to meet the maintenance margin on other securities in the account, and when the value of Much's other securities fell in 1973, the $17,500 offset losses of equity in those securities and enabled the account to continue to meet the maintenance margin. Eventually the value of the other securities fell so low that, even with the $17,500 surplus bond equity, Much's account did not meet Shearson's maintenance margin. Shearson issued maintenance calls to Much on August 22, September 11, November 26, November 29, December 7, and December 12, 1973. To satisfy these calls, Much sold a number of his securities at a loss; on December 12, 1973, he sold the "Ginnie Mae" bonds for $4,230.47 less than he had paid for them.

When Much learned that Shearson had included the $30,000 when calculating the maintenance margin for the entire account, he wrote to Shearson complaining that the alleged misrepresentations by Refakes and Dipisa had caused him to suffer the very loss he was trying to protect himself against. Much subsequently submitted a demand for arbitration.[2] After hearing testimony for three days and receiving post-hearing briefs, the arbitrator awarded Joseph Much $89,110.20. The arbitrator did not specify his reasoning, but both parties agree that $43,585.20 is for stock and bond losses that Much claimed on his 1973 federal income tax return. The other $45,-525.00 represents the $30,000 Much paid when he bought the "Ginnie Mae" bonds plus six years of interest at $8\frac{5}{8}\%$.

Shearson brought the present action in federal district court to vacate the damage portion of the arbitration award. Pleading hypothetically under Civil Procedure Rule 8(e)(2), Shearson assumed liability for $4,230.47 (the loss on the bonds) but contended that the remaining $84,879.73 should be vacated as fundamentally irrational. The district court agreed that the damage award was based on "sheer speculation" and enforced the arbitrator's finding of liability, but remanded the case to the arbitrator for a recalculation of damages. Shearson appeals on the ground that, because the district court found the damage award fundamentally irrational, the court could not remand on the damages issue. Shearson also argues that if remand is appropriate, the court should assign the case to a different arbitrator. Much counters that this court has no jurisdiction to hear the appeal.

## II.

This case presents a rather novel issue of appellate jurisdiction. Defendant-appellee Much argues that the district court order is neither a final judgment under 28 U.S.C. § 1291 nor an appealable injunction under 28 U.S.C. § 1292(a)(1). Plaintiff-appellant Shearson contends that the remand is, in substance, the same as an order compelling arbitration, which would be appealable under section 1291. Shearson also argues that because Much's claim is an action at law, the district court order is appealable under section 1292(a)(1).

■■■ As a general rule, only a final decision of a district court is appealable to a court of appeals. 28 U.S.C. § 1291 (1982). This court would clearly have jurisdiction under section 1291 if the district court had confirmed the arbitrator's entire award or had partially vacated the award and enforced the remainder without remanding. See, e.g., Randall v. Lodge No. 1076, International Association of Machinists and Aerospace Workers, 648 F.2d 462 (7th Cir.1981); Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d 649 (5th Cir.1979). Appellate jurisdiction would also lie if the district court had entered an order compelling arbitration for the first time. University Life Insurance Co. of America v. Unimarc Ltd., 699 F.2d 846, 848 (7th Cir.1983). But the district court did none of these; instead the court agreed with Shearson that the arbitrator's damages award was based on sheer speculation and remanded the action to the arbitrator for a recalculation of dam-

---

**2.** Much had filed an action in federal district court, but that action was dismissed because the contract between Shearson and Much contained an arbitration clause.

ages. Thus the issue becomes whether a district court order vacating and remanding the damages portion of an arbitration award is a final judgment under section 1291.

Only three cases explicitly discuss whether a remand order is appealable under section 1291, and they reach three different results. In *Stathatos v. Arnold Bernstein S.S. Corp.*, 202 F.2d 525 (2nd Cir.1953), the district court had vacated an arbitration award for partiality and had ordered the dispute resubmitted to arbitration. The Second Circuit held that it lacked jurisdiction to hear the appeal. 202 F.2d at 527–28. The Fifth Circuit reached the opposite conclusion, finding appellate jurisdiction after a district court ordered a new hearing before an arbitration panel. *Wells v. Southern Airways, Inc.*, 517 F.2d 132, 134 n. 3 (5th Cir.1975), *cert. denied*, 425 U.S. 914, 96 S.Ct. 1512, 47 L.Ed.2d 765 (1976). Finally, the First Circuit considered the appealability of a district court order remanding a dispute over computation of lost earnings to the original Board of Arbitrators. *Locals 2222, 2320–2327, International Brotherhood of Electrical Workers v. New England Telephone and Telegraph Co.*, 628 F.2d 644 (1st Cir.1980). Stating that "there is sometimes much to be said for candidly deciding the merits rather than toying with them in a jurisdictional minuet," the First Circuit assumed, without deciding, that the appeal was proper. 628 F.2d at 646–47.

■ We will not assume jurisdiction, yet we recognize the First Circuit's valid concern that the jurisdictional issue may become entangled and lost in the merits of the case. Shearson alleged, and the district court agreed, that the damage award was fundamentally irrational and based on sheer speculation. Assuming for the purposes of the jurisdictional issue that a district court may vacate and remand an arbitration award on the ground of fundamental irrationality, *but see Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 312 (7th Cir.1981), we must consider whether subsequent rulings of the trial court will "moot

the issues that the appellant would like to present, or raise new issues that the appellate court could most efficiently decide when reviewing the earlier ruling." *University Life Insurance Co.*, 699 F.2d at 849. If we conclude that mootness or a new issue could result from the remand, we do not have jurisdiction under section 1291.

■ A remand will not moot the issue or raise new issues if the remand requires only "ministerial action." *See In re Riggsby*, 745 F.2d 1153, 1156 (7th Cir.1984). For example, an appeals court had jurisdiction when a Workers' Compensation Benefits Review Board reversed an administrative law judge's determination of damages, supplied a formula for calculating damages, and remanded the case to the administrative law judge to enter an appropriate order. *St. Louis Shipbuilding and Steel Co. v. Casteel*, 583 F.2d 876, 876 n. 1 (8th Cir.1978). But "ministerial action" is a narrow exception; if a Benefits Review Board reverses an administrative law judge's denial of benefits and remands for a determination of benefits, the appeals court lacks jurisdiction. *Freeman United Coal Mining Co. v. Director, Office of Workers' Compensation Programs*, 721 F.2d 629, 631–32 (7th Cir.1983); *see also Howell v. Schweiker*, 699 F.2d 524, 526–27 (11th Cir.1983) (no appellate jurisdiction when a district court remanded to Secretary of Health and Human Services to determine whether plaintiff could perform substantial gainful activity). This court has also dismissed an appeal when a district court held that the National Railroad Adjustment Board had improperly excluded evidence and remanded the dispute to the Board for a second hearing. *United Transportation Union v. Illinois Central Railroad*, 433 F.2d 566, 568–69 (7th Cir. 1970), *cert. denied*, 402 U.S. 915, 91 S.Ct. 1374, 28 L.Ed.2d 661 (1971).

■ In the present case, the district court's remand will require more than applying a mandated formula to the numbers. Although the district court held that neither party could introduce new "primary

facts,"[3] the court stated that "it is not clear whether the arbitrator would have considered other methods of damage calculation if he knew that an award under [Much's] theory would be found invalid." Thus the district court left the choice of a damages formula to the arbitrator and—although we do not consider whether remand was permissible or appropriate—we believe the remand will require more than "ministerial action."

In addition to holding that the remand would not be a "ministerial action," we base our denial of appellate jurisdiction on the policies underlying the finality rule and the arbitration statute. As we noted above, the finality rule ensures that subsequent actions of the district court will not moot the issue appealed or raise new issues that should be considered with the original one. Shearson phrases the issue as whether the award of damages in excess of $4,230.47 is fundamentally irrational and should be vacated. On remand, however, the arbitrator could reach one of three decisions. First, he could find that damages are $4,230.47 or less. Then Much could appeal, arguing that the original $89,110.20 award was not fundamentally irrational or that the district court could not vacate an award on that ground. Thus an award of $4,230.47 or less, although probably an unlikely result, would present the same issues as this appeal. At the other extreme, the arbitrator could rely on a damage formula supplied by Much on remand and again award $89,110.20. Assuming this second award satisfied the district court's difficulty with the original award, the district court would confirm the award and Shearson could then appeal to this court, raising the same issues that it argues now. Neither of these two possible arbitration awards would moot an issue presently before the court or raise a new issue.

The third possible arbitration award—an award greater than $4,230.47 but less than $89,110.20—would present a new issue. Assuming the second award was confirmed by the district court and appealed to this court, Shearson would again argue that the award in excess of $4,230.47 was fundamentally irrational, that the district court should not have remanded the damages issue to the arbitrator, and that the award should be confirmed only in the amount of $4,230.47. Much, however, would have not only the arguments available in this appeal but also the argument that the district court's procedure was proper and that, even if the $89,110.20 award was fundamentally irrational, Much is entitled to collect the second damages award. Whether the second award is also fundamentally irrational would present a new issue on appeal.

Of course this potential issue does not exist with the way that Shearson phrases the issue in this appeal. Nor would the issue arise if we were to decide now that the award in excess of $4,230.47 was fundamentally irrational and that the district court should have confirmed the award in the amount of $4,230.47 rather than remanded to the arbitrator. But that approach mixes the merits of Shearson's claim with the appealability issue—something we refuse to do. The adverse consequence of our dismissing this appeal is the expense to the parties of returning to the arbitrator for a recalculation of damages and proceeding back through the federal courts to confirm or vacate the second award. *See New England Power Co. v. Asiatic Petroleum Corp.*, 456 F.2d 183, 185 (1st Cir.1972) ("expense and irritation of obtaining what may be an unenforceable arbitration award" are not enough to depart from the long-standing federal rule against piece-meal litigation). Although dismissing the present appeal may not promote judicial economy in this case, we believe this dismissal best promotes the policy of speedy, nonjudicial resolution of dis-

**3.** At oral argument, both parties admitted that they did not know what the district court meant by the term "primary facts." Since new evidence is not a ground to vacate an arbitration award, *Shearson Hayden Stone, Inc. v. Liang,* 653 F.2d 310, 313 (7th Cir.1981), we assume the district court intended that the parties would offer more specific damage calculations to the arbitrator based on evidence introduced at the first hearing.

putes which underlies the arbitration laws. Allowing the arbitrator to recalculate damages before continuing its action in federal court would have inflicted a fairly short delay in Shearson's appeal. By contrast, nearly ten months passed between the filing of a notice of appeal and oral argument before this court. Were we to allow appeals of remands and then affirm the district court orders, we would add additional months to the arbitration process. We refuse to allow an appeal here that would encourage other parties to file time-consuming appeals when a district court remands part of the case.[4]

### III.

We must also consider whether this court has jurisdiction under section 1292(a)(1), which allows appeals from district court orders "granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1) (1982). Under the *Enelow-Ettelson* rule, certain orders granting or denying a stay of judicial proceedings pending arbitration are appealable under 28 U.S.C. § 1292(a)(1). *See generally Ettelson v. Metropolitan Life Insurance Co.,* 317 U.S. 188, 191–92, 63 S.Ct. 163, 164–65, 87 L.Ed. 176 (1942); *Enelow v. New York Life Insurance Co.,* 293 U.S. 379, 381–83, 55 S.Ct. 310, 310–12, 79 L.Ed. 440 (1935). The test is whether the underlying cause of action is by its nature at law or in equity. If the underlying action is equitable, no jurisdiction lies. *Whyte v. THinc Consulting Group International,* 659 F.2d 817, 819 (7th Cir.1981). If the underlying action is at law, however, this court has jurisdiction of the appeal. *Wilson Wear, Inc. v. United Merchants and Manufacturers, Inc.,* 713 F.2d 324, 326–27 (7th Cir.1983).

Shearson argues that Much's claim for damages is by its nature an action at law and that therefore this court has jurisdiction under section 1292(a)(1). The difficulty with this argument is that here the district court did not stay any judicial proceeding; the court merely remanded the damages issue to the arbitrator. As this court stated in *Matterhorn, Inc. v. NCR Corp.,* 727 F.2d 629, 632 (7th Cir.1984), "it is not the court's interlocutory order to the parties to take some action (here, arbitration) but rather the grant or denial of a stay while the parties take the action that is considered an injunction." In the present case the district court ordered the damages issue remanded but did not stay any judicial proceeding. Therefore the *Enelow-Ettelson* rule does not apply and the district court order is not appealable under section 1292(a)(1).

APPEAL DISMISSED.

---

4. We need not decide whether an appeal lies when a district court vacates an arbitration award for a conflict of interest and then remands for a second hearing before a new arbitrator. It might promote judicial economy to allow appeals of a remand for an entirely new arbitration because the litigation ends if the appeals court reverses the district court and orders the arbitration award reinstated. *See*

*Liberian Vertex Transports, Inc. v. Associated Bulk Carriers, Ltd.,* 738 F.2d 85, 86–87 (2nd Cir.1984); *Merit Insurance Co. v. Leatherby Insurance Co.,* 714 F.2d 673, 683 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983). The present case, however, involves the remand of only one issue to an arbitrator who has already considered the entire case.