67 F.3d 301
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
AMERICAN TRAIN DISPATCHERS DEPARTMENT OF the INTERNATIONAL
BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Plaintiff-Appellee,
v.
NORFOLK SOUTHERN RAILWAY COMPANY, Defendant-Appellant.
 No. 94-3560.
 United States Court of Appeals, Seventh Circuit.
 Argued April 4, 1995.
Decided Sept. 26, 1995.
 
 Before RONEY*, BAUER and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 The American Train Dispatchers Department of the International Brotherhood of Locomotive Engineers, a Union representing, inter alia, train dispatchers, (the "Union"), sued Norfolk Southern Railway Company, a rail company subject to the Railway Labor Act, 45 U.S.C. Sec. 153 First and Second, for the enforcement of an arbitration award previously issued against Norfolk. The district court granted summary judgment for Norfolk but remanded to the arbitration board. Norfolk appeals the remand. We DISMISS for lack of jurisdiction.
 
 
 2
 The dispute submitted to arbitration involved employment practices concerning a dispatcher position. Prior to April 1, 1991, Norfolk's dispatching office at Knoxville, Tennessee had three dispatchers, each covering the separate territories of "Memphis," "West End," and "East End." Due to an increase in the workload of the first shift of the Memphis territory, Norfolk created an additional first-shift dispatcher position to cover the newly created "Knoxville" Territory, which was comprised of certain areas taken from the Memphis and West End territories.
 
 
 3
 It is this new position that is at issue here. Billed as a "Seven-Day" position, it required the dispatcher to work Monday through Friday, 8:00 a.m. to 4:00 p.m. Saturday and Sunday were to be rest days. On the rest days, however, no additional dispatcher was employed to cover the new dispatcher's absence. Rather, the dispatchers from the Memphis and West End territories working that day covered the Knoxville territory, as they normally did prior to the creation of the new position. The Union filed a grievance contending that by not hiring a dispatcher to cover the Knoxville Territory Dispatcher's rest days, Norfolk was in violation of the collective bargaining agreement between the Union and Norfolk. After proceeding through on-site dispute resolution, the parties submitted the dispute to a special adjustment board pursuant to the Railway Labor Act. 45 U.S.C. Sec. 153 Second.
 
 
 4
 The resulting "Public Law Board" ruled in favor of the Union. Norfolk paid over $30,000 to certain dispatchers as compensation in accordance with the decision.
 
 
 5
 Prior to the issuance of the Law Board's award (the "Award"), however, Norfolk eliminated the Knoxville "Seven-Day" dispatcher position. On May 16, 1993, Norfolk posted a "Five-Day" position to cover the Knoxville territory, Monday through Friday, 8:00 a.m. to 4:00 p.m. Unlike the Seven-Day position, however, the Five-Day position had no rest days. On Saturdays and Sundays, the dispatching for the areas covered by the Knoxville territory was performed by the Memphis and West End dispatchers on duty, as they did both before and after the institution of the Seven-Day position.
 
 
 6
 On July 1, 1993, the Union protested Norfolk's conduct in creating this Five-Day position as a violation of the Award and the collective bargaining agreement. Norfolk contended that the dispute over the Five-Day position is separate and independent from the issues regarding the Seven-Day position adjudicated by the Law Board. When the Union filed a petition with the district court to enforce the Award, both parties moved for summary judgment.
 
 
 7
 In a somewhat confusing order, the district court both granted Norfolk's motion for summary judgment and then "remanded to the Law Board for further proceeding and resolution." In granting Norfolk summary judgment, the district court appeared to specifically agree with Norfolk that this is a "separate and independent controversy from the earlier dispute, and therefore, requires further arbitration." If, as the district court seemed at this point to be saying, the remand was an order compelling the Board to arbitrate a new issue, then this final appealable order is wrong and must be reversed, as the parties have the option of either empaneling a new public law board or submitting the new dispute to the National Railroad Adjustment Board. United Steelworkers of America v. Aurora Equipment Co., 830 F.2d 753, 754 (7th Cir.1987); Shearson Loeb Rhoades, Inc. v. Much, 754 F.2d 773, 775-76 (7th Cir.1985); 45 U.S.C. Sec. 153 First and Second. Of course, if the first option is chosen, the same law board may, at the option of the parties, be used, but a district court cannot make this decision for the parties.
 
 
 8
 Later in the opinion, however, the district court seems to equivocate on its prior agreement with Norfolk's position that this controversy is separate from the one adjudicated by the Law Board, and indicates the Union might be right in its contention that Norfolk's move was a violation of the Award. Any question as to whether the conduct was a violation of the Award would, of course, have to be first resolved by the Law Board that made the Award. See The Brotherhood of Carmen v. Atchison, Topeka & Santa Fe RR., 956 F.2d 156, 160-61 (7th Cir.1992); see also Brotherhood of Way Employees v. Burlington Northern RR. Co., 24 F.3d 937, 938 (7th Cir.1994). A remand for that purpose would not be appealable as it is not a final order under 28 U.S.C. Sec. 1291. United Steelworkers of America v. Aurora Equipment Co., 830 F.2d at 754 ("When a district court remands a case to an administrative agency for further proceedings, the court's order is not a final judgment for purposes of appeal under 28 U.S.C. Sec. 1291. In Much we extended this principle to remands to arbitrators.")
 
 
 9
 Thus, the issue is squarely put: did the district court remand to the arbitrators to adjudicate a new issue or for a determination of whether the new position violated the Award? The most reasonable interpretation of the district court's order is that the remand was for a proper purpose. In spite of its prior agreement with Norfolk's "separate and independent controversy" contention, the last two paragraphs of the opinion reflect the court's recognition that the advertised Five-Day position might indeed be a violation of the award involving the Seven-Day position:
 
 
 10
 The Award No. 1 does not add or expand its applicability of the Award or provide helpful instructions on the future conduct of Norfolk. The Award simply states that the Law Board sustains the claim of the Union, which described the seven day position. Under these circumstances, an inquiry into the issue of whether the advertised five day position is essentially a seven day position previously found to be violative of Article 3(d) would necessarily require the court to interpret both the Award and the Agreement.
 
 
 11
 While it would not be unreasonable to interpret the Law Board's discussion to apply to the establishment of a five day position without rest days, it is not the duty or function of this court to define the scope of the Award or to interpret the Agreement. There is a genuine disagreement between Norfolk and the Union about the meaning of the Award, and such disagreement amounts to a minor dispute about the construction of the Agreement. Burlington, 1994 WL 187032 at * 1. Thus, under the RLA, the dispute before the court must be resolved by arbitration, not by judicial intervention.
 
 
 12
 The district court correctly left to arbitration the meaning of the Award. If the Labor Board finds that the dispute over the Five-Day position is indeed a separate and independent controversy, it would have no jurisdiction under the district court's order to resolve that dispute.
 
 
 13
 Thus the remand, for the limited purpose of interpreting the Award, is interlocutory and not appealable.
 
 
 14
 We note that the district court remanded the case after granting summary judgment for Norfolk. We need not address that conflict, as the summary judgment for Norfolk has not been appealed.
 
 
 15
 APPEAL DISMISSED.
 
 
 16
 EASTERBROOK, Circuit Judge, concurring in the judgment.
 
 
 17
 I agree with my colleagues that we lack jurisdiction under the approach of Shearson Loeb Rhoades, Inc. v. Much, 754 F.2d 773 (7th Cir.1985). Developments since 1985, particularly Sullivan v. Finkelstein, 496 U.S. 617 (1990), call that approach into question. If, as my colleagues say, Much treats a remand to an arbitrator the same way we treat remands to administrative agencies, then the analysis of Finkelstein, which addresses the latter issue, means that we must revisit the former. The district court in this case entered the sort of "remand" that is appealable under Finkelstein. But unless the panel is prepared to recommend the reconsideration of Much, see Circuit Rule 40(f), it is conclusive for the time being.
 
 
 
 *
 Hon. Paul H. Roney, Circuit Judge for the United States Court of Appeals for Eleventh Circuit, sitting by designation