In the

# United States Court of Appeals

## For the Seventh Circuit

No. 04-3664

KATHLEEN SEMIEN,

*Plaintiff-Appellant,*

*v.*

LIFE INSURANCE COMPANY OF NORTH AMERICA,
a CIGNA COMPANY, and BP LONG TERM
DISABILITY (LTD) PLAN,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 4795—**Charles P. Kocoras**, *Chief Judge.*

ARGUED DECEMBER 1, 2005—DECIDED FEBRUARY 6, 2006

Before FLAUM, *Chief Judge,* and BAUER and EVANS,
*Circuit Judges.*

FLAUM, *Chief Judge.* The defendant, Life Insurance
Company of North America ("LINA"), terminated the
payment of long term disability benefits to the plaintiff,
Kathleen Semien. In response, Semien filed suit against her
benefit plan, BP Long Term Disability Plan, and LINA
seeking an order compelling LINA to continue payment
of her disability benefits.

Additionally, Semien sought to compel discovery in or-
der to gather evidence about the relationship between the

physicians LINA consulted and the insurer. The district court denied Semien's motion to compel discovery and granted summary judgment in favor of the defendants. Semien appeals the district court's denial of her discovery requests as well as the district court's grant of summary judgment to LINA.

For the following reasons, we now affirm the judgment of the district court.

## I. Background

Kathleen Semien is a 54-year old woman who began working for BP-Amoco in February 1989 as an environmental remediation manager. On May 15, 2000, when Semien left BP-Amoco, she was employed as a chemical engineer. Her occupation required significant travel, concentration, teamwork, and quick reactions. Upon leaving her job, Semien filed a disability claim with BP's Long Term Disability Plan.

BP established its Consolidated Welfare Benefit Plan ("Plan") to provide long-term disability benefits to eligible employees. BP adopted a Plan Governance Amendment on January 31, 2000. The Amendment defined an "Administrative Named Fiduciary" as any entity that entered into an Administrative Services Agreement with the Plan Administrator. Administrative Named Fiduciaries were granted the authority to "Exercise such discretion as may be required to construe and apply the provisions of the Plan, subject only to the terms and conditions of the Plan." On April 1, 2000, LINA entered into an Administrative Services Agreement with Semien's employer covering long-term disability claims arising out of the Plan. As part of this Administrative Services Agreement, LINA would screen benefits and determine whether claims were payable under the Plan. In addition, LINA insured the benefits of employees under the Plan.

Semien asserts that she suffers from a variety of medical conditions: back pain, a herniated lumbar disk, bone spurs in her neck, carpal tunnel syndrome, other problems in her joints and extremities, fibromyalgia (a disease with no known causes or cure, but with symptoms including chronic pain "all over," fatigue, disturbed sleep, and other problems), and past sickness as a result of Hepatitis C. In addition to her alleged physical ailments, Semien also claims to suffer from chronic depression and mental confusion. She has been described as having suicidal thoughts and "masochistic, schizoid, and narcissistic features." Semien is currently taking several medications for pain, sleeping problems, and depressive disorders.

LINA received Semien's initial claim on September 15, 2000. This initial claim was approved on November 15, 2000. The bases for LINA's approval of benefits were side effects from Hepatitis C, medication, fatigue, and pain. In its initial approval, LINA stated its intent to monitor Semien's condition and reserved the right to request additional records. To receive benefits for the first 24 months of disability insurance, Semien only needed to show that she could not perform her "Regular Occupation or a Qualified Alternative" at BP. After the initial 24-month period, a more stringent standard applied.

During the two-year initial disability period, Semien submitted many medical records to LINA. Semien's physicians also completed assessments on her behalf. Some of these assessments indicated that Semien was capable of performing moderate work, but cautioned that her abilities were limited. Semien received fusion surgery on her back in January 2002.

On May 8, 2002, LINA sent Semien a letter stating that she would remain eligible for benefits only if illness prevented her from performing any qualified work or

earning 80% or more of pre-disability earnings. Additionally, during this time period, Semien's disability payments were reduced in part to offset the money she received from social security disability payments.

In a letter dated November 22, 2002, LINA notified Semien that "the information we have on file to date does not establish that you meet the Policy definition of Disabled. Accordingly, [long term disability] benefits are not payable beyond November 14, 2002, under this policy." LINA further explained, "[Y]our file was . . . reviewed by a Nurse Care Manager and a Behavior Care Specialist. It was noted that the medical documentation does not support your inability to perform your occupation as an Environmental Business Manager[.] . . . Accordingly no additional benefits are payable under the policy."

The language of the long-term disability plan states:

> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:
>
> > 1. unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or
> >
> > 2. unable to earn 80% or more of his or her Indexed Covered Earnings.

On March 25, 2003, Semien appealed LINA's termination decision. She submitted a great deal of medical evidence to support her appeal. LINA hired an independent psychiatric consultant, Dr. Jack Greener, to review the medical history in Semien's file. Dr. Greener did not personally examine Semien.

Dr. Greener's report concluded that Semien's depression was severe enough to prevent her from functioning in a

work setting from January 24, 2003, to February 21, 2003. He stated that, "The psychiatric documentation demonstrates a degree of depression of moderate severity and then of severe degree, which would preclude the client from performing her regular job according to the job description supplied." In an addendum to his original report, Dr. Greener wrote, "After careful review it is evident that the client is capable of performing a sedentary to light job, which does not require irregular and unplanned hours, evening meetings, responses 24 hours a day, [and] emergency responses, which would require immediate attention and travel."

Dr. Eddie Sassoon, a physician retained by LINA, also concluded from a review of Semien's medical records that she was capable of performing a sedentary or light duty occupation. Semien contends that Dr. Sassoon did not assess her psychiatric impairments or consider records from Dr. Liu or Dr. Nagle. It is unclear from Dr. Sassoon's evaluation, which consisted of only two pages, exactly what information he reviewed. Dr. Sassoon stated that "the report was completed in the interest of time constraints, based on the documentation provided, which was extensive in nature."

Lynne Lonberg, an independent senior rehabilitation counselor and vocational expert retained by LINA, conducted a Transferable Skills Analysis based on the physicians' appraisals. In this analysis, Lonberg listed several "potential occupations Ms. Semien could perform within her skills, education, physical/mental abilities and wage requirement [of 80% of Indexed Covered Earnings.]" Potential suitable occupations included employment as a chemical engineer, chemical research engineer, or absorption and adsorption engineer.

In a letter dated June 27, 2003, LINA affirmed its determination that Semien was not disabled under the

terms of the plan and therefore did not qualify for benefits after November 14, 2002. On July 11, 2003, Semien filed suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking an order forcing LINA to award her disability benefits under the Plan.

During the course of this litigation, LINA refused to comply with five discovery requests: one interrogatory and four document production requests related to the relationship between LINA and the physicians consulted. Semien filed a motion to compel discovery with the district court. This motion to compel discovery was denied in an opinion dated April 21, 2004.

On October 7, 2004, the district court entered summary judgment for LINA, holding that LINA's decision on Semien's claim for benefits was not arbitrary and capricious. The district court also added in a footnote that "the denial of benefits would survive even if we applied the de novo standard."

## II.  Discussion

We review a district court's grant of summary judgment using a de novo standard. *See, e.g.*, *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 419 (7th Cir. 1998). "That is, we review 'without deference for the view of the district judge and hence almost as if the motion had been made to us directlӳ.' *Id.* (quoting *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993)).

## A.  Appropriate Standard of Review Under ERISA

The initial question in this appeal is whether the district court used the proper standard of review when evaluating the plan administrator's denial of benefits. The

standard of judicial review in civil actions under 29 U.S.C. § 1132(a)(1)(B) depends upon the discretion granted to the plan administrator in the plan documents. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.").

"[T]he presumption of plenary review is not rebutted by the plan's stating merely that benefits will be paid only if the plan administrator determines they are due, or only if the applicant submits satisfactory proof of his entitlement to them." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000). In order to lower the level of judicial review from de novo to arbitrary and capricious, "the plan should clearly and unequivocally state that it grants discretionary authority to the administrator." *Perugini-Christen v. Homestead Mortgage Co.*, 287 F.3d 624, 626 (7th Cir. 2002).

The district court found that the BP Long Term Disability Plan granted discretionary authority to LINA. Therefore, the plan administrator's "decision had to be examined under the 'arbitrary and capricious' standard of review." The district court provided two bases for its decision. In an April 21, 2004, opinion denying Semien's motion to compel discovery, the district court cited the Plan's Employee Benefits Handbook for authority to use an arbitrary and capricious standard of review. In the October 7, 2004, opinion granting summary judgment, the district court cited the BP Long-Term Disability Plan and a subsequent Administrative Services Agreement between BP and LINA as mandating an arbitrary and capricious standard of review.

Semien challenges the validity of the Employee Benefits Handbook. She claims that because the handbook

was not published as part of the plan until after the initial denial of benefits, it may not be considered in evaluating her claim. *See Hacket v. Xerox Corp. Long Term Disability Income Plan*, 315, F.3d 771, 774 (7th Cir. 2003); *but see Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62 (7th Cir. 1996). We need not reach the question of the handbook's validity. Regardless of whether the handbook was properly considered, the BP Long-Term Disability Plan, coupled with the Administrative Services Agreement between BP and LINA, established LINA's authority and requires that decisions by the plan administrator be reviewed under an arbitrary and capricious standard.

The BP Long-Term Disability Plan explicitly provides for arbitrary and capricious review of plan administrator determinations:

> Plan Administration
>
> The administration of the Long-Term Disability Plan is the shared responsibility of the claims administrator and the Plan Administrator. The claims administrator receives, processes and pays all claims for benefits. The claims administrator for the Plan is:
>
> Prudential Life Insurance
>
> . . . .
>
> The Plan Administrator and the claims administrator have the sole discretion and authority to apply, construe and interpret all Plan provisions, to grant or deny all claims for benefits and to determine all benefit eligibility issues.
>
> *. . . . All decisions or determinations made by the claims administrator and the Plan Administrator will be final and binding on all parties unless such party has acted in an arbitrary and capricious nature.*

>The Plan Administrator is an officer of the Company with responsibility for employee benefits, as designated by the Board of Directors . . .

(emphasis added).

While there is no dispute that the quoted language provides for arbitrary and capricious review, Semien claims that BP never properly delegated its discretionary authority to LINA, the new plan administrator. Unlike several of our sister circuits, this Court has not addressed the question of whether the delegation of a plan administrator's discretionary authority need be express. *See, e.g.*, *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1388-89 (9th Cir. 1994) (benefit decision by an employee not explicitly given discretion is reviewed de novo); *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 597 (6th Cir. 2001) (when a "decision is made by a body other than the one authorized by the procedures set forth in a benefits plan," the standard of review is de novo); *see also McKeehan v. CIGNA Life Ins. Co.*, 344 F.3d 789, 793 (8th Cir. 2003) ("[I]nsurers are accustomed to de novo judicial review of their decisions, and therefore we do not infer discretionary authority when an employer or plan sponsor has funded its obligations under an ERISA plan by purchasing a standard-form group insurance policy. Rather, we require 'explicit discretion-granting language' in the policy or in other plan documents to trigger the ERISA deferential standard of review." (citations omitted)). Because we find that BP provided LINA with an express delegation of discretionary authority to act as plan administrator, we need not reach the question of whether an implied delegation of authority would be sufficient to shift discretionary authority from the original plan administrator to an insurer.

Semien contends that only the original plan may be considered in determining if LINA is a fiduciary entitled

to deference. That contention has been rejected by this Court. *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 712 (7th Cir. 1999) ("[O]ften the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as 'the plan.'"); *see also Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 990-91 (7th Cir. 2005). Under ERISA, fiduciaries are allowed to designate other individuals "to carry out fiduciary responsibilities . . . under the plan." 29 U.S.C. § 1105(c)(1)(B).

In a 2000 Plan Governance Amendment, BP sets out "Procedures for Identification of an Administrative Named Fiduciary." An Administrative Named Fiduciary may be identified by entering into an Administrative Services Agreement with the Plan. LINA entered into an Administrative Services Agreement with the Plan in April 2000. The Administrative Services Agreement states that "LINA will provide the initial and ongoing screening of claims to determine whether benefits are payable in accordance with the terms of the Plan." Thus, by the terms of the Administrative Services Agreement, LINA agreed to exercise authority over the plan and was granted the same discretionary authority as the original plan administrator.

Additionally, this Court recently stated that the question of whether an administrator is a fiduciary should be "viewed 'in functional terms of control and authority over the plan.'" *Ruiz*, 400 F.3d at 990 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)). As in *Ruiz*, this Court must determine whether the delegated entity, in this case LINA, was a fiduciary. 29 U.S.C. § 1002(21)(A)(iii) (A fiduciary is a person who "has any discretionary authority or discretionary responsibility in the administration of such plan."). Based upon the language of the Administrative Services Agreement, the district court correctly found that LINA was a fiduciary and had discretionary authority over the administration of the plan. Thus, LINA's decisions as

plan administrator are entitled to review under an arbitrary and capricious standard.

**B.  LINA's Denial of Benefits**

On a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In addition, at the summary judgment stage, all inferences are drawn in favor of the non-moving party. *See, e.g.*, *Estate of Moreland v. Dieter*, 395 F.3d 747, 758 (7th Cir. 2005). In this case, to affirm the district court's grant of summary judgment, we must find that when taken in the light most favorable to Semien, there is no evidence LINA's denial of benefits was arbitrary and capricious.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan. Absent special circumstances such as fraud or bad faith, the [plan administrator's] decision may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Trombetta v. Cragin Fed. Bank for Savings Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996) (internal citations omitted).

To constitute a full and fair review under 29 U.S.C. § 1133(2), all the evidence that Semien submitted should have been considered by LINA. *See* 29 C.F.R. § 2560.503-1(h)(2)(iv) (Claims procedures must "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.").

The reports by the physicians LINA hired to review Semien's claim demonstrate a thorough consideration of the available information. These physicians found Semien capable of activities that would disqualify her from long-term disability coverage. Although Semien's treating physicians reached different conclusions as to her abilities, under an arbitrary and capricious review, neither this Court, nor the district court, will attempt to make a determination between competing expert opinions. Instead, an "insurer's decision prevails if it has rational support in the record." *Leipzig v. AIG Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004).

The two physician reports prepared for LINA, coupled with the Transferable Skills Analysis prepared based upon those reports, provide a sufficient basis and rational support for the conclusion that Semien was ineligible for long-term disability benefits. While the conclusions in the medical reports submitted by Semien are also rational, "[r]aising debatable points does not entitle [the claimant] to a reversal under the arbitrary-and-capricious standard." *Sisto v. Ameritech Sickness and Accident Disability Benefit Plan*, 429 F.3d 698, 701 (7th Cir. 2005).

No evidence in the record demonstrates bias by the physicians LINA consulted. Nor has any evidence been presented to convince this Court that the appraisals by LINA's physicians were so inherently flawed as to be rendered arbitrary and capricious. The confines of the ERISA statute and the constraints of judicial resources do not permit this Court, nor the district courts, to engage in the complex weighing of expert testimony when a plan administrator has been granted discretionary authority. Where an insurance plan gives discretionary authority to a plan administrator, ERISA provides a limited Article III review. Engaging in the type of in-depth review Semien advocates not only runs contrary to statutory intent, but

would tax the judicial resources of the district courts and magistrate judges beyond the breaking point.

## C. Semien's Discovery Requests

Given our determination that, based upon the evidence in the record, the district court was correct to grant summary judgment, the only remaining question for this Court is whether the record relied upon was complete. Put another way, did the district court err by denying Semien's requests to compel additional discovery?

Semien's discovery requests sought information concerning the relationship between LINA and the physicians paid to evaluate Semien's claim. LINA believed that these discovery requests went beyond the scope of discovery allowed in ERISA cases. The district court agreed and refused to compel discovery.

"It is well-settled that district courts enjoy broad discretion in controlling discovery. A district court's exercise of discretion on discovery matters will only be reversed upon a showing of a clear abuse of discretion." *McCarthy v. Option One Mortgage Corp.*, 362 F.3d 1008, 1012 (7th Cir. 2004) (citing *Leffler v. Meer*, 60 F.3d 369, 374 (7th Cir. 1995)) (internal citation omitted). Generally, parties may obtain discovery regarding any matter that is relevant and not privileged. FED. R. CIV. P. 26(b)(1).

As discussed above, where a plan administrator possesses discretionary authority, the district court reviews his or her decisions under the "deferential 'arbitrary and capricious'" standard. *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1019 (7th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).

The district court's denial of Semien's motion to compel discovery relied primarily upon *Perlman v. Swiss*

*Bank Corp. Comprehensive Disability Protection Plan*, 195
F.3d 975 (7th Cir. 2000). In *Perlman*, this Court articulated
its reluctance to grant extensive discovery in ERISA cases:

> [W]hen there can be no doubt that the application
> was given a genuine evaluation, judicial review is
> limited to the evidence that was submitted in support
> of the application for benefits, and the mental processes
> of the plan's administrator are not legitimate grounds
> of inquiry any more than they would be if
> the decisionmaker were an administrative agency.

195 F.3d at 982.

A key component of the *Perlman* decision is the first
line above, "when there can be no doubt the application was
given a genuine evaluation." *Id.* Thus, *Perlman* distin-
guishes cases in which no evidence of a failure to conduct a
"genuine evaluation" has been presented from those cases
in which a prima facie showing of bias or conflict of interest
has been made.

When a prima facie showing of misconduct or bias is
made, or a claimant demonstrates a good faith basis to
believe that limited discovery will produce such evidence,
the district court should engage in a more cautious review.
*See Van Boxel v. Journal Co. Employees' Pension Trust*, 836
F.2d 1048, 1053 (7th Cir. 1987). "The existence of a sliding
scale in judicial review of ERISA trustees' decisions is
suggested by the cases that, while purporting to
apply a uniform 'arbitrary and capricious' standard, in
fact give less deference to a decision the more the trustees'
impartiality can fairly be questioned." *Id.*

When addressing the impact of a conflict of interest under
an "arbitrary and capricious" standard of review, the
Supreme Court stated, "Of course, if a benefit plan gives
discretion to an administrator or fiduciary who is operating
under a conflict of interest, that conflict must be weighed as
a 'facto[r] in determining whether there is an abuse of

discretion.' " *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (quoting RESTATEMENT (SECOND) OF TRUSTS, § 187, Comment *d* (1959)). When "impartiality can fairly be questioned," district courts should allow limited discovery. By allowing limited discovery in cases where a prima facie showing of impropriety has been made, district courts ensure that the "arbitrary and capricious" standard of review is not toothless.

In the instant case, a substantial amount of medical evidence was analyzed by physicians compensated by LINA. These physicians were not employees of the company, they did not fail to analyze relevant medical evidence, and the claimant has not presented any evidence to demonstrate a prima facie case of misconduct or conflict of interest. The fact that a plan administrator has compensated physicians for their consulting services is not, in and of itself, sufficient to establish a conflict of interest worthy of further discovery. Although a plan administrator's self interest may be a "factor" to "weigh" in evaluating plan determinations, there is no reason to assume independent consultants are not impartial when evaluating medical records. *See Perlman*, 195 F.3d at 981. Thus, we have no basis to believe that the physicians in this case did not conduct a full and fair evaluation of Semien's condition.

When reviewing a plan administrator's decision in the ERISA context, the district court has significant discretion to allow or disallow discovery requests. This is a fact-specific determination and will not be overturned by this Court absent a clear abuse of discretion. *See McCarthy*, 362 F.3d at 1012. The ERISA statute does not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation," nor should district courts require such an explanation following a claim denial. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Decisions by plan administrators are not cloaked with the same level of authority as administrative agency determinations. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332 (7th Cir. 2000). Once an ERISA plan grants a plan administrator discretionary authority to evaluate claims, however, the plan administrator's motivations should not be questioned absent a prima facie showing of some misconduct or conflict of interest. *See Perlman*, 195 F.3d at 981-82. Absent this initial showing, the strong warning of *Perlman* remains intact: "We have no reason to think that [a plan administrator's] benefits staff is any more 'partial' against applicants than are federal judges when deciding income-tax cases." *Perlman*, 195 F.3d at 981.

Although discovery is normally disfavored in the ERISA context, at times additional discovery is appropriate to ensure that plan administrators have not acted arbitrarily and that conflicts of interest have not contributed to an unjustifiable denial of benefits. In these exceptional cases, where a district court allows limited discovery based upon what appears to be a sustainable allegation, the district court must monitor discovery closely. In this supervisory role, the district court should employ all available tools, including the imposition of Rule 11 sanctions against those who would abuse the discovery process.

Where a claimant makes specific factual allegations of misconduct or bias in a plan administrator's review procedures, limited discovery is appropriate. *See Bruch*, 489 U.S. at 115 (a conflict of interest is a factor to be considered when reviewing a plan administrator's denial of benefits); *see also Van Boxel*, 836 F.2d at 1053 (less deference is appropriate where a trustee's impartiality can be fairly questioned). A claimant must demonstrate two factors before limited discovery becomes appropriate. First, a claimant must identify a specific conflict of interest or instance of misconduct. Second, a claimant must make a prima facie showing that there is good cause to believe

limited discovery will reveal a procedural defect in the plan administrator's determination. *See Bennett v. Unum Life Ins. Co. of Am.*, 321 F. Supp. 2d 925, 932-33 (E.D. Tenn. 2004) ("Where . . . an ERISA plaintiff comes forward with a reasonable basis to believe that this conflict of interest has solidified into conscious, concrete policies, procedures, and practices to promote the company's financial welfare at the expense of a full and fair evaluation of the plaintiff's claim for benefits, then the plaintiff should be allowed to conduct limited discovery to determine whether such policies, procedures, and practices do actually exist and, if so, to what extent they interfered with the fair review of the plaintiff's claim for benefits. This information would certainly be relevant to the Court when conducting its review of the decision to deny benefits.").

Semien is correct to note that this standard presents a high bar for individuals whose claims have been denied by a plan administrator with discretionary authority. Discovery will be allowed into the motivations of a plan administrator or into the motivations of "independent" physicians only where the claimant has made a prima facie showing of misconduct or conflict of interest. While this standard essentially precludes discovery without an affidavit or factual allegation, we believe that this approach is the only reasonable interpretation of ERISA. "Like a suit to challenge an administrative decision, a suit under ERISA is a review proceeding, not an evidentiary proceeding." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 875 (7th Cir. 1997). Thus, district courts are correct in limiting discovery except in exceptional circumstances.

Congress has not provided Article III courts with the statutory authority, nor the judicial resources, to engage in a full review of the motivations behind every plan administrator's discretionary decisions. To engage in such a review would usurp plan administrators' discretionary authority and move toward a costly system in which Article III courts

conduct wholesale reevaluations of ERISA claims. Imposing onerous discovery before an ERISA claim can be resolved would undermine one of the primary goals of the ERISA program: providing "a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990) (internal citation omitted). While claimants who believe they are the victims of arbitrary and capricious benefits decisions should feel free to seek relief in federal court, trial judges must exercise their discretion and limit discovery to those cases in which it appears likely that the plan administrator committed misconduct or acted with bias.

In the instant case, Semien has presented no prima facie evidence of misconduct or conflict of interest. As a result, the district court lacked good cause to believe that further discovery would reveal misdeeds by LINA or improper motivations on the part of the consulting physicians. Thus, the district court was correct to deny Semien's motion to compel.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

No. 04-3664                                                                                          19

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*