Lamerle Sundy HUGHES, Plaintiff,

v.

**CUNA MUTUAL GROUP**
**et al., Defendants.**

No. 1:08–cv–00101–SEB–JMS.

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 7, 2009.

Amanda Lynn Yonally, Bridget L. O'Ryan, O'Ryan Law Firm, Indianapolis, IN, for Plaintiff.

Daniel Keenan Ryan, Hinshaw & Culbertson, Chicago, IL, Jennifer Jay Kalas, Renee J. Mortimer, Hinshaw & Culbertson, Schererville, IN, for Defendants.

### *ORDER*

JANE MAGNUS–STINSON, United States Magistrate Judge.

Presently before the Court is Plaintiff's Motion to Compel (the "Motion"). [Dkt. No. 51.] It has been fully briefed, and was the subject of oral argument. [Dkt. Nos. 52, 53, 57.]

### BACKGROUND

The Plaintiff, Ms. Hughes, has filed her Complaint under the Employee Retirement Income Security Act of 1974 ("*ERISA* "), 29 U.S.C. § 1001, *et seq.* She claims that the Defendant CUNA Mutual Long Term Disability Insurance ("*CUNA* ") wrongfully stopped paying her disability insurance benefits. [Dkt. No. 32.] She is concerned that CUNA did so, in whole or in part, because it has a conflict of interest. Specifically, CUNA both evaluates the merits of disability claims and pays the benefits out of its pocket. [Dkt. No. 51 at 2.]

To discover the extent of the conflict and the possible effect it may have had on her claim, Ms. Hughes served interrogatories and requests for production on CUNA. [*See* Dkt. Nos. 51–2 and–3.] But CUNA generally refused to answer the discovery other than to provide the administrative record and benefit plan documents. It says that this lawsuit is an appeal of an administrative proceeding (i.e. CUNA's claims determination) that will rise or fall on whether CUNA arbitrarily and capriciously denied the claim based on the record it had. [Dkt. No. 52 at 1.] To the extent that a conflict exists (a proposition that CUNA resisted at oral argument), CUNA has minimized or reduced its effect by "walling off" its business-side employees and its claims-determination decisionmakers—which CUNA eagerly explained in response to one interrogatory of the set it

contended were otherwise improper. [*Id.* at 4–6.]

### DISCUSSION

### A. Discovery Generally

■ The Federal Rules of Civil Procedure afford litigants liberal discovery. They are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. Pro. 26(b)(1). For the purposes of discovery, "relevance" includes both that which would be properly admissible at trial, and anything that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* If the information requested is relevant, the resisting party bears the burden of establishing the applicability of one of the exceptions found in Rule 26(b)(2)(C). *E.g. Tomanovich v. Glen,* 2002 WL 1858795, at *1–2, 2002 U.S. Dist. LEXIS 14885, at *4 (S.D.Ind.2002). Generally speaking, those exceptions involve a showing that the proposed discovery is unreasonable, dilatory, or will impose a burden greater than its likely benefit in the circumstances of the case. Fed. R. Civ. Pro. 26(b)(2)(C). The Court has wide latitude in determining whether any of those exceptions apply. *E.g. Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 682 (7th Cir.2002).

### B. Determining What Is "Relevant" in ERISA Cases

■ When a plaintiff challenges a denial of benefits under ERISA, the Court applies one of two standards of review. The default standard is a *de novo* one. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where, however, a benefit plan gives the claims administrator discretion to determine benefit eligibility or construe plan terms, the standard is deferential; courts must affirm benefit denials that are not shown to be arbitrary and capricious. *Id.* CUNA maintains, and Ms. Hughes does not dispute, that the deferential standard applies here. [Dkt. No. 52 at 1.]

When the deferential standard applies, ERISA proceedings in federal court are usually confined to reviewing the record that the plan administrator had when it denied bene-

fits. *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975, 981–82 (7th Cir.1999) ("Deferential review of an administrative decision means review on the administrative record."). So long as that general rule applies, the Federal Rules do not authorize discovery into anything other than the administrative record; nothing else is relevant for Federal Rule 26(b)(1) purposes. *See id.*

Until recently, the law in this Circuit was clear about when claimants could argue matters outside the administrative record, thereby increasing what is "relevant" and thus discoverable. Where, as here, a claimant wanted to conduct discovery about a conflict of interest that may have tainted the claims denial, the Seventh Circuit's decision in *Semien v. Life Insurance Co. of North America,* 436 F.3d 805 (7th Cir.2006), required two things. First, the claimant had to "identify a specific conflict of interest or misconduct." *Id.* at 815. Second, the claimant had to "make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Id.* This standard precludes most claimants from obtaining any conflict discovery, and intentionally so. *Id.* (describing situations where conflict discovery is appropriate as "exceptional").

As the parties' briefs and statements of additional authority aptly chronicle, courts in this Circuit—and throughout the country—have split over whether the two-part test in *Semien* (or its extra-Circuit counterparts) remains viable after the Supreme Court's recent decision in *MetLife v. Glenn,* —— U.S. ——, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). There the Supreme Court clarified how courts should handle conflicts of interest in ERISA benefit determinations, albeit not specifically in the discovery context. It held that entities that both fund ERISA plans and conduct benefit determinations (just like the situation here) have a conflict of interest as a matter of law. *Id.* at 2348–49. And while courts must consider conflicts when determining whether the benefits denial was arbitrary and capricious, the Supreme Court rejected "special burden-of-proof rules, or other special procedural or evidentiary rules,

focused narrowly upon the evaluator/payor conflict." *Id.* at 2351. Instead, it instructed that the precise weight to affix to the conflict depends on the circumstances of the case:

> The conflict of interest ... should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision-making irrespective of whom the inaccuracy benefits.

*Id.* (citations omitted).

In *Glenn,* the Supreme Court affirmed a judgment reinstating benefits, in part, because the administrative record had "little" to say about the insurer's "efforts to assure accurate claims assessment." *Id.* In that regard, Justice Kennedy lamented the Court's decision to fault the insurer for not including evidence of its attempts to mitigate the conflict while denying the insurer the chance (by not remanding for further proceedings) to put the evidence into the record. *See id.* at 2356 (Kennedy, J., concurring in part and dissenting in part) ("The Court ... notes that 'the record says little about MetLife's efforts to assure accurate claims assessment,' thereby implying that MetLife is to blame for failing to introduce structural evidence in the earlier proceedings. Until today's opinion, however, a party in MetLife's position had no notice of the relevance of these evidentiary considerations." (citation and alteration omitted)).

Despite the split among the various courts elsewhere, all three decisions from this District that have considered the issue agree that *Semien*'s two-part test for authorizing conflict discovery no longer remains viable. *Gessling v. Group Long Term Disab. Plan for Employees of Sprint/United Mgmt. Co.,* 2008 WL 5070434, at *1, 2008 U.S. Dist.

LEXIS 96623, at *3 (S.D.Ind.2008) (Hamilton, C.J.) (calling *Semien* apparently "superseded"); *Fischer v. Life Ins. Co. of N. Am.,* 2009 WL 734705, at *2–3, 2009 U.S. Dist. LEXIS 22487, at *6 (S.D.Ind.2009) ("Judge Hamilton's skepticism that *Semien* remains vital in light of *Glenn's* holding appears well founded, and supports permitting Plaintiff to conduct discovery."); *see Creasey v. Cigna Life Ins. Co.,* 255 F.R.D. 481, 482–83 (S.D.Ind.2008) (not applying the *Semien* test, but denying discovery until the plaintiff shows that the case is a "close one" for which the conflict-of-interest factor could be dispositive).

■ The magistrate likewise concludes that that test is incompatible with *Glenn's* rejection of "special procedural ... rules." *Glenn,* 128 S.Ct. at 2351. Litigants in other types cases do not have to make a "prima facie showing" of "good cause" to obtain discovery as *Semien* required. So long as they can state a claim for which relief can be granted—and CUNA does not dispute that Ms. Hughes has—the Federal Rules entitle them to discovery of everything that is relevant. *Glenn* makes clear that conflicts of interest are relevant (even though the precise weight may vary from case to case). And Justice Kennedy's opinion indicates that the Court expressly contemplated an evidentiary showing on them. Therefore, Federal Rule of Civil Procedure 26(b)(1) allows Ms. Hughes to explore CUNA's conflict-of-interest in discovery.

### C. The Timing of Conflict Discovery

Finding facts about CUNA's conflict-of-interest relevant does not resolve the Motion's merits. Federal Rule of Civil Procedure 26(b)(2)(C)(iii) specifically requires the Court to prevent discovery whose expense "outweighs its likely benefit." That necessarily includes preventing discovery on issues that, while technically relevant, will not matter in the final analysis. Avoiding needless discovery is important in any lawsuit. *See* Fed. R. Civ. Pro. 1 (aspiring to the "just,

speedy, and inexpensive determination of every action and proceeding"). It is especially important in ERISA cases. The statutory scheme that Congress created in ERISA reflects a congressional determination that benefit determinations—for both "workers and beneficiaries"—ought be "inexpensive[ ] and expeditious[ ]." *Semien,* 436 F.3d at 815 (quotation omitted).[1]

Magistrate Judge Hussmann's ruling in *Creasey* adopted a timing approach to control discovery costs. If cross-motions for summary judgment reveal that judgment for one side would be necessary regardless as to what the conflict discovery might reveal, there would be no need to endure the expense of discovery. *See Creasey,* 255 F.R.D. at 483. If, but only if, knowing the extent and effect of the conflict would matter, then discovery would be worth the cost and time necessary to complete it. *See id.* Thus, *Creasey* deferred finally deciding whether to permit discovery until after the summary judgment briefing. *See id.*

■ There is a certain appeal to the *Creasey* approach: It would help achieve the public policy that Congress has articulated for ERISA disputes. But the magistrate cannot endorse it in this case for two reasons. First, CUNA has not made any (much less a convincing) showing that the merits of its case are so strong that the requested discovery would be a waste of time and money. As the party resisting discovery, CUNA bears the burden of proving that the costs of discovery outweigh the possible benefits. *Tomanovich,* 2002 WL 1858795, at *1–2, 2002 U.S. Dist. LEXIS 14885, at *4. Its failure to make that showing prevents the magistrate from concluding that the discovery is futile. Second, while CUNA did not respond to most of Ms. Hughes' discovery, it did provide a full-page answer about all the steps that it claims to have taken to reduce the risk of bias from its conflict of interest. [Dkt. No. 51–3 at 7–8.] Our adversarial system generally disfavors selective disclosure. *Cf. In re Consol. Litig. Concerning Int'l Harvester's*

---

1. While Ms. Hughes argues that ERISA's legislative history does not in fact support that proposition [Dkt. No. 53 at 5–6], *Semien* concludes otherwise, in a part of the decision not affected by *Glenn.* It is not the province of this Court to reconsider issues that the Seventh Circuit has already decided.

*Disposition of Wisc. Steel,* 666 F.Supp. 1148, 1153 (N.D.Ill.1987) (discussing prohibition against selective waiver in the attorney-client privilege context). Ms. Hughes is entitled to view with skepticism CUNA's claim that she—and "this court"—now have all that is "need[ed] to analyze the extent to which any conflict of interest affected CUNA's decision to deny Ms. Hughes'[ ] continued long term disability benefits." [Dkt. No. 52 at 6.] She should be entitled to discovery to satisfy that skepticism, so that she can bring additional information to the Court's attention that CUNA may not have provided.

### D. Ms. Hughes' Discovery Requests

Other than providing self-serving interrogatory responses, CUNA took an all-or-nothing approach to its objections to Ms. Hughes' discovery requests. It did not have a fallback position about the extent of discovery that the Court should authorize if the magistrate rejected (as she does) CUNA's reliance on *Semien.* Despite that failure (though it was a high risk strategy on CUNA's part), the Court will not automatically permit Ms. Hughes to serve all of her discovery. Rather, in light of the congressional mandate that ERISA disputes be resolved as quickly and efficiently as possible, the magistrate will independently review the requested items to ensure that they are reasonable. Counsel, in this case and in others, should not expect such action as a matter of course in the future.

### CONCLUSION

For the foregoing reasons, the magistrate finds that Ms. Hughes' Motion should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART.** CUNA's objections to Ms. Hughes' Interrogatories and Requests for Production are **OVERRULED,** except as follows:

- Interrogatory Number 12—This item seeks identifiable information about which other policyholders had their claims denied.[2] This information is not reasonably likely to lead to admissible information about whether CUNA's conflict infected Ms. Hughes' claim and invades their privacy interests.[3]

- Request for Production Number 6—This item seeks claim procedure manuals and other similar documents about the processing of long-term disability claims. CUNA shall only produce those documents used in or otherwise in existence during CUNA's review of Ms. Hughes' claim. Documents from other time periods are not reasonably likely to lead to the discovery of admissible information.

- Request for Production Number 7—This item seeks correspondence with medical examiners and their employees "received by Defendant at any time during the pendency of Plaintiff's claim for long term disability benefits." CUNA shall only produce those documents that reference Ms. Hughes or her claim. Other documents are not reasonably likely to lead to the discovery of admissible information. Further, they are likely to reveal highly personal information about other individuals' medical conditions.

- Request for Production Number 11—This item seeks IRS Form 1099s for the medical or vocational professionals involved in Ms. Hughes' claim. CUNA shall redact Social Security Numbers from any forms produced in response to this item to protect the identities of the individuals involved.

- Request for Production Number 12—This item seeks the personnel files for the employees involved in Ms. Hughes' claim. CUNA shall not respond to this item because Ms. Hughes has not included it in her Motion [Dkt. No. 51 at 14] and because the information is highly personal and not likely to provide much, if any, admissible information.

---

**2.** The Court presumes that the reference to "State Farm" in the Interrogatory was a typographical error given the chart found at Docket 51 page 4.

**3.** CUNA shall still answer Interrogatory Number 13, which seeks the claims payment history for the individuals who would have otherwise been listed in response to Interrogatory Number 12. This item will not provide any identifiable information.

- Request for Production Number 14— This item seeks documents about employee compensation criteria or standards. CUNA shall only provide documents relating to criteria or standards in effect during the pendency of Ms. Hughes' claim and for the employees involved in that claim. Documents from other time periods and irrelevant employees are not reasonably calculated to lead to the discovery of admissible information.

- Request for Production Number 21— This item seeks documents about payment histories under the disability plan at issue. CUNA shall redact individually identifiable information from any documents produced in response to this item. Such information is highly personal and not reasonably likely to lead to the discovery of admissible information.

CUNA shall fully respond to the discovery to the extent that no objection has been sustained within twenty (20) days.

To ensure that discovery in this case stays focused on the conflict-of-interest issue, Ms. Hughes may not serve any additional discovery (including deposition notices) without first obtaining leave of Court.