Beverly **BARKER**, Plaintiff,

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA and Saic Employee Health & Welfare Benefits Plan,** Defendants.

No. 1:09–cv–0369–LJM–DML.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 28, 2009.

Amanda Lynn Yonally, Bridget L. O'Ryan, O'Ryan Law Firm, Indianapolis, IN, for Plaintiff.

Daniel Keenan Ryan, Hinshaw & Culbertson, Chicago, IL, Jennifer Jay Kalas, Renee J. Mortimer, Hinshaw & Culbertson, Schererville, IN, for Defendants.

*Order on Plaintiff's Motion to Compel (Dkt.50) and Defendants' Motion to Quash Subpoena to a Nonparty (Dkt.23)*

DEBRA McVICKER LYNCH, United States Magistrate Judge.

This matter is before the court on Plaintiff Beverly Barker's motion to compel responses to interrogatories and requests for production directed to Defendant Life Insurance Company of North America ("LINA") (Dkt.50). Defendants LINA and SAIC Employee Health and Welfare Benefits Plan[1] have also filed a motion to quash the subpoena Barker served on nonparty Intracorp for the production of documents under Fed. R.Civ.P. 34(c) (Dkt.23). The court held oral argument on these motions.

Barker is seeking judicial review of LINA's decision that she does not qualify for long-term disability benefits under her SAIC employee welfare benefits plan ("Plan") that LINA administers and insures. Barker argues that *Metropolitan Life Ins. Co. v. Glenn*, —— U.S. ——, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008), allows discovery to examine the alleged conflict that arises from LINA's dual roles as an evaluator of claims and a payor of those claims. LINA responds generally that *Glenn* does not permit discovery; it also makes specific objections to particular requests. The court finds that the Supreme Court's holding in *Glenn* does contemplate the production of evidence relevant to LINA's alleged conflicts in making disability determinations. Certain requests for production, however, are not relevant to whether a conflict exists or would require the production of third parties' private medical information. The motion to compel and the motion to quash are therefore GRANTED IN PART and DENIED IN PART.

## I. *Background*

Barker alleges that she qualified for long-term disability benefits in July 2007 and that her treating physicians reported to LINA that she was totally disabled. Despite the evidence of her disability, LINA denied her claim for disability benefits based on an evaluation of her medical condition by doctors paid by Intracorp.

LINA contracted with Intracorp to review files to determine eligibility for benefits. One of Intracorp's medical reviewers, Dr. Westerband, reviewed Barker's file and determined she was able to perform certain types of work and was not disabled. LINA describes Intracorp as a "third party," although Barker alleges that Intracorp and LINA are both owned by the same parent company. (*Defendants' Motion to Quash Subpoena Directed to Intracorp or, Alternatively, for a Protective Order* ("Defendants' Motion to Quash"), at 2; *Plaintiff's Motion to Compel*, at 2 n. 1.)

### A. *Motion to Compel*

Barker served interrogatories and requests for production of documents on LINA

---

1. The motion to compel is directed only to LINA, but the motion to quash is filed on behalf of Defendants LINA and the SAIC Employee Health and Welfare Benefits Plan. The court will use "LINA" to refer to the responding party on the motion to compel and collectively (with SAIC) as the moving parties on the motion to quash.

on May 28, 2009. LINA responded on August 3, 2009, by asserting (1) that case law prohibits discovery on the benefits denial decision absent specific showings of misconduct and (2) that the particular discovery requests were not reasonably calculated to lead to the discovery of relevant evidence. LINA asserts the same general arguments in support of its motion to quash as it does in response to the motion to compel.

### B. *Motion to Quash*

On May 27, 2009, Barker served nonparty Intracorp with a nonparty *subpoena duces tecum* for documents in Intracorp's possession related to (1) its review of Barker's disability claim and (2) its relationship with LINA. LINA, acting for Intracorp, moved to quash the subpoena.

### II. *Analysis*

In response to the motion to compel and in support of the motion to quash the subpoena, LINA makes two arguments: (1) discovery into claims denial decisions generally is not permitted, and (2) that even if such discovery were allowed, Barker's discovery requests exceed the permitted scope. In response, Barker argues that *Glenn* changed existing law that had previously disallowed discovery about the claims review process and that the specific discovery requests are proper to prove the extent to which bias or financial motive influenced the denial decision.

### A. *Whether Discovery of the Benefits Denial Decision is Permitted*

■ LINA asserts that the requested discovery is not permitted because Seventh Circuit precedent requires two showings before a plaintiff is entitled to discovery outside the administrative record: (1) a showing of a specific conflict or instance of misconduct on behalf of LINA, and (2) a prima facie showing of good cause to believe that limited discovery would reveal a procedural defect. (*Defendant's Response to Plaintiff's Motion to Compel,* at 15.) Barker maintains that *Glenn* supersedes the existing Seventh Circuit precedent so that the requested discovery is permitted to prove the extent to which bias influenced the denial decision.

The Federal Rules of Civil Procedure provide for liberal discovery by requiring disclosure of any relevant matter. *Hughes v. CUNA Mutual Group,* 257 F.R.D. 176, 177 (S.D.Ind.2009). "Relevant" matter, in the discovery context, extends beyond information properly admissible at trial to include anything that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); *see Hughes,* 257 F.R.D. at 177. Here, this court must determine what is "relevant" in cases where a plaintiff challenges a denial of benefits under an ERISA plan.

■ The court's standard of review applicable to the administrator's decision affects the relevancy determination. *See id.* Barker concedes that under *Raybourne v. Cigna Life Ins. Co. of New York,* 576 F.3d 444 (7th Cir.2009), the appropriate standard of review is abuse of discretion. When the deferential standard applies, discovery is usually limited to reviewing the administrative record before the plan administrator when it denied benefits. *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975, 981–82 (7th Cir.1999).

Until recently, the law in this Circuit was clear that a claimant who wanted to discover information about a conflict of interest that possibly influenced the claims decision had to satisfy two elements beyond the usual relevancy standard of Fed.R.Civ.P, 26. First, the claimant had to "identify a specific conflict of interest or misconduct." *Semien v. Life Ins. Co. of North America,* 436 F.3d 805, 815 (7th Cir.2006). Second, the claimant had to "make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Id.* This standard permits conflicts discovery in only the most "exceptional" cases. *Id.*

Barker argues that *Semien's* strict limitations governing conflicts discovery have been abrogated by *Glenn,* and that she is therefore entitled, at the outset, to conduct discovery to determine the extent that conflicts influenced the benefits determination. LINA argues that *Glenn* did not specifically address discovery, that *Semien* has not been

overruled, and that because it does not dispute that it served as both claim administrator and insurer, no discovery is necessary on this issue.

In *Glenn*, the Supreme Court held that a plan administrator who "both determines whether an employee is eligible for benefits and pay benefits out of its own pocket" operates under a conflict of interest. 128 S.Ct. at 2346. This conflict can be weighed as a factor in determining whether there was an abuse of discretion in the claims denial decision. The Court noted that the weight to give the conflict depends on the unique circumstances of each case:

> [A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* at 2351 (internal citation omitted). The Court also advised that it did not "believe it was necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." *Glenn*, 128 S.Ct. at 2351. "Indeed, special procedural rules would create

further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress." *Id.* The Court warned against a "one-size-fits-all procedural system." *Id.*

A number of courts have addressed the threshold question presented here: whether *Glenn* affects ERISA discovery rules. At least one court in this Circuit has held that *Glenn* does not overrule *Semien*. *Marszalek v. Marszalek & Marszalek Plan*, 2008 WL 4006765, *2–3 (N.D.Ill.2008). Courts that have re-affirmed *Semien* in light of *Glenn* have done so, in large part, because they found that the congressional purposes of inexpensive and expeditious claims decisions requires the continued application of *Semien*. *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, 264 F.R.D. 394, 399–400, 2009 WL 3260010, *6 (N.D.Ill.2009).

Courts in this district, however, have almost unanimously reached the opposite conclusion and have concluded that *Glenn* abrogated the *Semien* standard requiring a claimant to make an exceptional showing before she can obtain discovery.[2] *Anderson v. Hartford Life and Accident Ins. Co.*, 668 F.Supp.2d 1129, 2009 WL 3733343 (S.D.Ind. 2009); *Hughes*, 257 F.R.D. at 176; *Fischer v. Life Ins. Co. of North America*, 2009 WL 734705 (S.D.Ind. March 19, 2009); *Gessling v. Group Long Term Disability Plan*, 2008 WL 5070434, *1 (S.D.Ind. Nov. 26, 2008) (finding that *Semien's* discovery limitations "appear to be superceded").

This court is persuaded by the reasoning advanced in those decisions. First, the *Semien* standard is incompatible with *Glenn's* rejection of "special procedural ... rules." The very purpose of the *Semien* standard was to create a procedural hurdle for obtaining discovery that exceeds the requirements of the Federal Rules of Civil Procedure. The additional burdens imposed by *Semien*

---

2. *Creasey v. Cigna Life Ins. Co.*, 255 F.R.D. 481 (S.D.Ind.2008), is the lone exception. Although Judge Hussmann found that *Glenn* had modified *Semien*, he ruled that parties were first required to brief dispositive motions and that if the case presented a close call, only then would the court permit discovery. *Id.* at 483. He concluded that discovery would not usually be warranted in

cases where an administrator admitted a conflict of interest. *Id.* at 482–83. This court declines to adopt the approach set out in *Creasey* because it requires a claimant—without the benefit of any discovery—to show that a conflict exists and that the conflict motivated the administrator. That is the approach *Glenn* majority rejected. *See* 128 S.Ct. at 2357.

should yield to the more liberal framework sanctioned by *Glenn.*

Second, this additional procedural hurdle for claimants did little to satisfy its proffered rationale of expediting proceedings or reducing administrative costs. *See Semien,* 436 F.3d at 815 (quoting *Perry v. Simplicity Eng'g,* 900 F.2d 963, 967 (6th Cir.1990)) (one of ERISA's primary goals is to resolve benefits disputes "inexpensively and expeditiously.") The discovery rules are already construed and applied to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1. In fact, the Supreme Court noted that unique rules for ERISA cases would only increase the time and expense for adjudication that these cases require. *Glenn,* 128 S.Ct. at 2351.

Third, the only way for the district courts to implement *Glenn's* directive—to determine the weight to be accorded the conflict of interest factor in light of the "circumstances" of the case—is to determine what those circumstances are. *Glenn,* 128 S.Ct. at 2351; *see Anderson v. Hartford Life and Accident Ins. Co.,* 668 F.Supp.2d 1129, 1131–32, 2009 WL 3733343, *2 (S.D.Ind.2009). This usually cannot be accomplished without discovery. LINA argues that the "circumstances" have already been determined because LINA has told Barker what steps it took to ensure accuracy in the claims review process. (*Defendant's Response to Plaintiff's Motion to Compel,* at 4–5.) Besides serving as an implicit concession that such information is relevant, LINA's response is nothing more than a selective disclosure of discoverable information. *See Hughes,* 257 F.R.D. at 179–80.

For all of these reasons, this court will permit Barker, as a general proposition, to conduct discovery on whether LINA's conflict influenced the claims denial decision. This requires the court to address Barker's individual discovery requests.

**B. *Whether the Individual Discovery Requests Are Proper***

Barker seeks to compel responses to 15 interrogatories, and 17 requests for production.[3] Those interrogatories, requests for production, and LINA's responses are set forth in the Appendix. For purposes of this order, they have been grouped according to the subject matter.

**1. Discovery Served on LINA**

*a. Identities of Reviewers and Compensation*

■ Barker's Interrogatories 1–3 and Requests for Production 5 and 8 request identification and compensation of all people who reviewed the claim file and participated in the denial decision. Interrogatory 4 and Requests for Production 9 and 25 seek total payments from LINA to medical or vocational experts for 2004–2009. LINA responds that the identities of the individuals are contained in the administrative record. It objects to disclosing any specific compensation information other than to say that its employees are paid fixed salaries. LINA also objects to providing compensation information for periods other than the pendency of Barker's claim review in 2008 and 2009.

LINA is ordered to respond to Interrogatories 1–3 and 4 and Requests for Production 5, 8, and 9. Both *Hughes* and *Fischer* ordered production of information that could otherwise be found in the claim file and of the compensation of individuals who reviewed Barker's claim. This information meets the standard for relevance on the issue of bias.

There is disagreement in this district, however, on the scope of that discovery. *Hughes* found that only documents relating to employee compensation criteria during the pendency of the claimant's review are relevant. 257 F.R.D. at 181. This court agrees with

---

**3.** Barker's motion to compel originally sought an order compelling responses to 16 interrogatories and 24 requests for production. When LINA filed its response to the motion to compel, it agreed to respond to two of the requests for production it had initially opposed. In her reply, Barker withdrew her request for personnel files contemplated in one of the requests. During the oral argument, LINA agreed to provide a response to Request for Production 12, provided that the information produced would be subject to a protective order. Barker withdrew her request for an order compelling responses to Interrogatory 12 and to Requests for Production 3, 13, and 14.

the decision in *Fischer* and will allow discovery of a longer period, *i.e.*, 2004–2009, in this case. Information from an extended time period is relevant to show trends or adjustments in compensation correlated with any changes in denial rates that could indicate bias on a close denial decision. LINA is ordered to redact the Social Security numbers on all 1099s produced to Barker.

### b. *Personnel Files and Performance Evaluations*

■ Request for Production 11 seeks personnel files and performance evaluations of LINA's employees who reviewed Barker's claim. LINA argues that this information is private because those employees are not parties to the litigation. LINA asserts that Judge Stinson and Judge Baker have refused to order production of this information for that reason.

LINA is correct that *Hughes* and *Fischer* both denied production of the personnel files because those courts determined that the information was "particularly sensitive" and "less connected to the conflicts analysis." *Fischer*, 2009 WL 734705, at *5. Those courts however, *did* require disclosure of the performance evaluations and compensation of those individuals who participated in the claims review (discussed in the above section), and this court believes that production of this information is appropriate. Accordingly, this court will not order production of the entire personnel files, but does order production of the performance evaluations for those individuals who reviewed Barker's claim.

### c. *Other Claim Reviews*

■ Interrogatories 5–7 seek the number of claims reviewed for the past five years by the same people who reviewed Barker's claim and the number of claims that were denied or terminated. Interrogatories 8–13 and Requests for Production 15–19 are similar and seek information particular to Plan members whose benefits were denied.

LINA responds that the denial or termination of other claims is irrelevant because the only issue is whether Barker was eligible for long-term disability benefits. It also contends that the scope is too broad because Barker did not submit her claim until 2007.

As Judge Baker determined in *Fischer*, "statistical information regarding the approval/denial/termination of benefits under Plaintiff's insurance plan" may be relevant to the issue of bias in the claims review process. 2009 WL 734705, *4–5. This court therefore orders the production of responses to Interrogatories 5–13.

■ On the other hand, the information sought by Requests for Production 15–19 is actually financial information about the company too far removed from the benefits decision. These requests ask for the management reports themselves that contain the denial or termination rates. LINA is not required to produce this information for the same reason that it is not required to produce the information listed in Request for Production 20, discussed below.

### d. *Financial Information*

■ Request for Production 20 seeks financial information for the Plan for the last five years. The profitability or net worth of the company is not relevant or connected to the conflicts analysis. LINA is not required to produce the information requested in Request for Production 20.

### e. *Steps to Ensure Accurate Claims Decisions*

■ Requests for Production 21 and 22 seek documents showing how LINA reduces bias and improves claim accuracy. LINA claims that its response to Interrogatory 14 outlines how claims are reviewed and steps it has taken to eliminate bias and that no further discovery is necessary. Judge Magnus–Stinson rejected this argument in *Hughes*, observing:

> Our adversarial system generally disfavors selective disclosure. Ms. Hughes is entitled to view with skepticism CUNA's claim that she—and "this court"—now have all that is "need[ed] to analyze the extent to which any conflict of interest affected CUNA's decision to deny Ms. Hughes' [ ] continued long term disability

benefits." She should be entitled to discovery to satisfy that skepticism, so that she can bring additional information to the Court's attention that CUNA may not have provided. *Hughes,* 257 F.R.D. at 180. This court agrees with Judge Magnus–Stinson's reasoning and orders LINA to produce the information listed in Requests for Production 21 and 22.

### f. Relationship Between Intracorp and LINA

■ Interrogatories 17–19 and Request for Production 24 seek information about the relationship of Intracorp and LINA for the past five years, and the number of claims LINA denied that were reviewed by Intracorp. Request for Production 7 requests all contracts and agreements with third-party medical reviewers, and LINA asserts that Intracorp is its only reviewer. LINA argues that this information is irrelevant to whether a conflict existed and is overbroad, because Intracorp did not review Barker's claim until 2009. LINA has produced only Dr. Westerband's invoice for reviewing Barker's claim.

This court finds that these requests are particularly relevant in light of the alleged relationship between LINA and Intracorp. The point of having a third-party medical provider is for it to make independent medical judgments. If, however, it is nothing more than a captured sister company of LINA, that information could be indicative of bias in the review process. LINA is ordered to produce the information requested in Interrogatories 17–19 and Request for Production 24.

■ Requests for Production 23 and 26 seek medical peer review reports that Intracorp's physicians prepared for other claims. LINA responds that these reports have no relevance to whether LINA properly reviewed Barker's claim and that such discovery involves private information from individuals who are not parties to the action. This court agrees with Judge Magnus–Stinson's determination in *Hughes* that any relevance to Barker's claim that other claimants' review files may have is outweighed by the invasion of those claimants' privacy that would result from the production of their files. Thus, this court will not order the production of documents requested in Requests for Production 23 and 26.

### g. Protective Order

During the September 24, 2009 hearing, LINA requested a protective order for any documents or other information that this court orders it to produce. The court agrees that an order limiting disclosure of certain matters covered by this order is appropriate. The court orders counsel for LINA, SAIC, and Barker to confer on the terms of an agreed protective order. If they cannot agree, LINA and SAIC may file a motion for protective order (addressing, consistent with this order, only disclosure to persons not parties to this litigation) within 10 days of this order.

### 2. Motion to Quash

The motion to quash presents generally the same issues identified by Barker's motion to compel.

The subpoena's document requests are contained the Appendix. The requests all concern either Intracorp's review of Baker's file or its relationship with LINA. Some of the requests are duplicative of information sought in discovery served on LINA.

The first two document requests concern documents exchanged between Intracorp and LINA regarding Barker's claim. Intracorp shall produce the documents indentified in Requests 1 and 2.

■ Requests 3, 7, 8, 14, and 15 all concern the amount of compensation exchanged between Intracorp and LINA or Intracorp and Dr. Westerband. This information could reveal whether Intracorp and Dr. Westerband are independent medical reviewers or are in essence employed by LINA. Intracorp shall produce the documents identified in these requests.

Requests 4 and 5 concern information that Intracorp or Dr. Westerband has regarding Barker, and the documents identified in these requests shall be produced.

■ Requests 6 and 16 ask for the production of contracts or other agreements be-

tween LINA and Intracorp or Intracorp and Dr. Westerband. These documents may reflect the independence that Intracorp or Dr. Westerband retained in the review process and shall be produced.

■ Requests 11, 12, and 13 ask for copies of all reports or documents that show how many medical records were reviewed or billing rates for the past three (3) years by Intracorp or Dr. Westerband for LINA. Production of these reports would likely require the disclosure of third parties' medical information, and LINA's motion to quash is granted as to these four requests. Intracorp and Dr. Westerband are not required to provide responses to Requests 11–13.

■ Requests 9 and 10 ask for *all* reports that Intracorp or Dr. Westerband created for LINA during the past three years. These requests are overbroad and would require the disclosure of third parties' medical information. LINA's motion to quash these two requests is granted, and Intracorp and Dr. Westerband are not required to provide responses to Requests 9 and 10.

Intracorp shall produce the documents identified in the requests above within 21 days of the date of this order. Intracorp shall redact any personal information of claimants other than Barker in the documents.

### III. *Conclusion*

LINA must produce responses to Interrogatories 1–13 and 17–19. LINA must also produce the documents requested in Requests for Production 5, 7, 8, 9, 21, 22, and 24. Intracorp must respond to Requests 1–8 and 14–16 in the *subpoena duces tecum.* Both LINA and Intracorp must produce the information within 14 days from the court's entry of a protective order as specified above.

So ORDERED.

*Appendix of Disputed Discovery Requests in the Motion to Compel and the Subpoena Duces Tecum*

**Disputed Interrogatories**

*INTERROGATORY NO. 1:* Please state the name and position of the individual completing these interrogatories and the name, address, position, employer, and role of each and every individual who processed, analyzed, or investigated Plaintiff's disability claim on behalf of Life Insurance Company of North American ("LINA") at any time. Additionally, identify how the individuals listed in response to this interrogatory are compensated and the amount of that compensation.

*ANSWER:* Answers to these interrogatories were completed by counsel for Life Insurance Company of North America ("LINA"). As to the second part of the interrogatory, pursuant to Federal [R]ule of Civil Procedure 33(d), defendant LINA refers Plaintiff to the Administrative Record of LINA's investigation of the Plaintiff's claim, a copy of which is being produced herewith. The Administrative Record discloses all individuals who reviewed or participated in the investigation and adjudication of the Plaintiff's claim on behalf of the subject employee benefits plan and LINA. As to the third part of this interrogatory, the Defendant objects thereto. This part of the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence, in that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

*INTERROGATORY NO. 2:* With regard to Plaintiff's claim, please state the name, address, title, employer and telephone number of any doctor, nurse, or vocational professional who rendered a report or opinion to LINA or examined records for LINA.

*ANSWER:* Pursuant to Federal Rule of Civil Procedure 33(d), Defendant LINA refers Plaintiff to the Administrative Record of LINA's investigation of the Plaintiffs claim, a copy of which is being produced herewith[.] The Administrative Record discloses all individuals who reviewed or participated in the investigation and adjudication of the Plaintiff's claim on behalf of the subject employee benefits plan and LINA.

*INTERROGATORY NO. 3:* For any individual listed in response to Interrogatory # 2, identify how that person, and their employer if applicable, was compensated and the exact amount of compensation for their work on this claim.

*ANSWER:* Objection. This interrogatory is not reasonably calculated to [lead to] the discovery of admissible evidence, in that it does not bear on Plaintiff's entitlement to benefits under the plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim. Further this interrogatory seeks private information from individuals who are not parties to this litigation.

*INTERROGATORY NO. 4:* For any individual listed in response to Interrogatory # 2, identify how much LINA has paid to this individual, and their employer, for the years 2004–2009 for each year.

*ANSWER:* Objection. This interrogatory is not reasonably calculated to [lead to] the discovery of admissible evidence, in that it does not bear on Plaintiff's entitlement to benefits under the plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim. Further, this interrogatory seeks private information from individuals who are not parties to this litigation.

*INTERROGATORY NO. 5:* For any individual listed in response to Interrogatory # 2, identify the number of claims reviewed by this individual and their employer, for LINA during the years 2005–2008 for each year.

*ANSWER:* Objection. This interrogatory is not reasonably calculated to [lead to] the discovery of admissible evidence, in that it does not bear on Plaintiff's entitlement to benefits under the plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

*INTERROGATORY NO. 6:* For any individual listed in response to Interrogatory # 2, state the number of claims that the individual and their employer reviewed in which they found the claimant not disabled, restricted or impaired for the years 2008–2008.

*ANSWER:* See response to interrogatory no. 5.

*INTERROGATORY NO. 7:* For the number of claims identified in Interrogatory # 5, provide the number of those claims that were denied or terminated by LINA.

*ANSWER:* See response to interrogatory no. 5.

*INTERROGATORY NO. 8:* Provide the number of SAIC employees who have received disability benefits from LINA since January 1, 2005.

*ANSWER:* See response to interrogatory no. 5.

*INTERROGATORY NO. 9:* Provide the number of SAIC employees who have received disability benefits from LINA which benefits have been terminated since January 1, 2005.

*ANSWER:* See response to interrogatory no. 5.

*INTERROGATORY NO. 10:* Provide the number of SAIC employees who have applied for disability benefits since January 1, 2005.

*ANSWER:* See response to interrogatory no. 5.

*INTERROGATORY NO. 11:* Provide the number of SAIC employees who have applied for disability benefits from LINA which benefits have been denied since January 1, 2005.

*ANSWER:* See response to interrogatory no. 5.

*INTERROGATORY NO. 13:* Provide the claims payment history for the SAIC group including but not limited to the approval, denial and termination rates for this group for each year since January 1, 2005.

*ANSWER:* See response to interrogatory no. 5.

*INTERROGATORY NO. 17:* Describe the relationship between LINA and Intracorp.

*ANSWER:* Objection. This interrogatory is not reasonably calculated to [lead to] the

discovery of admissible evidence, in that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

*INTERROGATORY NO. 18: List the amounts paid by LINA to Intracorp for the years 2005, 2006, 2007, 2008.*

*ANSWER:* Objection. This interrogatory is not reasonably calculated to [lead to] the discovery of admissible evidence, in that it does not bear on Plaintiffs entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

*INTERROGATORY NO. 19:* Provide the number of claims reviewed by Intracorp for LINA for the years 2005, 2006, 2007, 2008.

*ANSWER:* Objection. This interrogatory is not reasonably calculated to [lead to] the discovery of admissible evidence, in that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

**Disputed Requests for Production**

5. Copies of any and all correspondence with any medical examiners, or their employers, sent or received by LINA at any time during the pendency of Plaintiff's claim for long term disability benefits.

*RESPONSE:* See documents contained in the Administrative Record produced herewith.

7. Contracts or agreements between LINA and any third party, or their employer, who provided a medical review in this claim.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim. LINA also objects on the grounds that the Request seeks confidential, proprietary and trade secret information.

8. Billing statements from any medical or vocational professionals, or their employers, that reviewed this claim for LINA or the entities that employee these professionals.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

9. Any documents, such as 1099 forms, that show amounts paid by LINA for each of the years 2005–2008 to any medical or vocational professionals, or their employers, who were involved in this claim.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim. Further answering, it seeks private information from individuals who are not parties to this litigation and who have not put their compensation at issue.

11. The performance evaluations or performance reviews for each LINA employee who was involved in this claim for the years 2005–2008.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim. Further answering, it seeks private information from individuals who are not parties to this litigation and who have not put their employment at issue.

15. All management reports since 2005 showing liability acceptance rates by LINA for the Plan.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

16. All management reports since 2005 showing approval rates by LINA for the Plan.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

17. All management reports since 2005 showing the denial rates by LINA for the Plan.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

18. All management reports since 2005 showing the termination rates by LINA for the Plan.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

19. LINA's claims payment history for the Plan for the past five years.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

20. Any and all financial documents maintained by LINA regarding the Plan for the past five years including but not limited to any reports that demonstrate the assets, liabilities, and profit and losses of this group.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

21. Any documents that show active steps taken by LINA to reduce potential bias and to promote accuracy in the claims process.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

22. Any and all documents showing management checks implemented by LINA that penalize inaccurate decision making.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

23. Copies of all reports composed by Dr. Hector Westerband and provided to LINA over the past five years.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it

does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim. Further, this request seeks private information from individuals who are not parties to this litigation, and who have not put their physical condition as issue.

24. All agreements between LINA and Intracorp for the past five years.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

25. Any documents, such as 1099 forms, that show amounts paid by LINA for each of the years 2005–2008 to Intracorp.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim.

26. Copies of all reports prepared by Intracorp physicians for LINA over the past three years.

*RESPONSE:* Objection. This Request is not reasonably calculated to [ ] lead to the discovery of admissible evidence, and that it does not bear on Plaintiff's entitlement to benefits under the Plan, and because it seeks information beyond the information that was submitted to LINA when it adjudicated the Plaintiff's claim. Further, this request seeks private information from individuals who are not parties to this litigation, and who have not put their physical condition as issue.

**Subpoena Duces Tecum to Intracorp**

1. All correspondence, memorandums, notes, messages and any other writings to INTRACORP and/or Dr. Hector Westerband ("Dr.Westerband") from any claims persons, representatives or employee of Life Insurance Company of North America ("LINA"), or any of its subsidiaries concerning Beverly Barker's claims.

2. All correspondence, memorandums, notes, messages and any other writings from INTRACORP and/or Dr. Westerband to any employee of LINA concerning Beverly Barker.

3. All agreements, checks, statements, bills, invoices and any other writings reflecting payment(s) made and/or to be made to INTRACORP and/or Dr. Westerband for services performed in connection with Beverly Barker's claim.

4. All notes, tapes, papers or any other writing or recording regarding INTRACORP's work and/or Dr. Westerband's work in reviewing the medical records and/or claim of Beverly Barker.

5. The complete file of INTRACORP and/or Dr. Westerband regarding Beverly Barker.

6. All contracts, agreements, or any other writings regarding the performance of medical examinations, reviews or consultations by Dr. Westerband for INTRACORP for the last three (3) years.

7. Records sufficient to show the amount of compensation paid to Dr. Westerband by INTRACORP for the performance of medical examinations, reviews and consultations for the last three (3) years.

8. Records sufficient to show the amount of compensation paid to INTRACORP by LINA for the performance of medical examinations, reviews, and consultations for the last three (3) years.

9. A copy of all reports generated by INTRACORP for LINA in disability claims for the past three (3) years.

10. A copy of all reports generated by Dr. Westerband for LINA in disability claims for the past three (3) years.

11. Any and all documents, letters, records, or other writings which reflect how many medical record reviews were per-

formed by INTRACORP for LINA over the past three (3) years.

12. Any and all documents, letters, records, or other writings which reflect how many medical record reviews were performed by Dr. Westerband for LINA over the past three (3) years.

13. Any and all documents which reflect Dr. Westerband and INTRACORP's billing rates for the past three (3) years for medical record reviews.

14. Any and all documents which reflect the amounts paid by LINA to INTRACORP for the past three (3) years to review claims.

15. Any and all documents which reflect the amounts paid by INTRACORP to Dr. Westerband for the past three (3) years to review claims.

16. Any and all contracts or agreements between INTRACORP and LINA.